Good morning. Mr. Hoff, would you like to reserve any time for rebuttal? Yes, Your Honor. I'd like to reserve five minutes. All right. Hopefully you can see the clock. Please begin. Good morning, Your Honors. May it please the court. I'm Adam Hoff on behalf of the appellant. This case is about the finality of court orders and their enforceability in the bankruptcy process. This appeal presents three legal issues for review. One, whether the loan was accelerated in 2009, triggering the Arizona six-year statute of limitations. Two, whether the 2010 claim disallowance order precludes relitigation under the principles of res judicata. And three, whether the lien is void under 11 U.S.C. 506D, because the claim was filed and disallowed. We view this as each issue independently requires reversal. Together, they show that Riverflow funding has no enforceable claim. I'll address acceleration first, then res judicata, then lien avoidance. And so moving straight into the acceleration issue, under Arizona law, a debt is accelerated when the creditor takes an affirmative act, clearly signaling that the entire balance is due. The Arizona Court of Appeals in Baseline Financial Services v. Madison explained that examples of acceleration include demanding full payment before all installments are due, repossessing property, or filing suit for the entire balance. The standard is an overt act that puts the debtor on notice. In this case, we have two such overt acts. First, IndyMac, who at the time held both the senior and junior liens in this case, filed a motion for relief from stay in the debtor's 2008 bankruptcy case. And was that relief from stay as to the second? They filed a relief as to specifically, the caption was the first, but... And the relief given was as to the first. It was not. It was a general order. No, the relief is based upon the ask. And we'll get back to that in, I think, a later part of your argument. The relief was to foreclose on the first. The only reference in the second was in the calculation of equity as a whole, wasn't it? No, and what we look at, and this is an important element of the case, is we look at the order. And so I agree that the order should reflect the ask, but if you look at the order, the order in no uncertain terms... But the second never moved for it. They didn't need to move for it. How can that be? Primarily because IndyMac held both the first and second mortgage. Right, but those are two separate debts. Acknowledge the two separate debts. Treat it as two second debts, right? Well, the question would be, under the order that was granted by the court in 2008, could either the first mortgage or the second mortgage move to foreclose on the property? And so my point is, the debtor shouldn't have to make that determination based on the motion. It should have to make that determination based on the order. And the order has very broad language. It says vacating the state, quote, as to, quote, any and all stays against lien enforcement. And so... You can get... You can foreclose for the failure to pay one monthly payment. Right? So was there a foreclosure where the debt was accelerated? That didn't happen though, did it? I don't think it's necessary because it's taken... That is an overt act, but our point is that the mere existence of a stay-left motion coupled with the proof of claim is the overt act necessary to trigger acceleration. They don't actually have to foreclose because the state itself, the order, which was very broad, said that the creditor had the right to foreclose. Okay, but what... Okay, so that's there, but what's the evidence before the trial court or before us that, as part of that foreclosure, I mean, okay, yes, they could foreclose, but they could have foreclosed just on the missing of one payment. What do we have before us to say that, once they got relief from stay, they really did accelerate this? Well, we couple that, and let me answer the question this way. It seems to me that, you know, it's not that you're asking us to connect the dots. You're asking us to fill in a blank. I don't have that information that they did accelerate it. I don't see it in the record. So, what we're saying is that the stay lift itself is sufficient. I think... When coupled. Okay. I think you've got a number of other points that are more important here. So, subject to Mr. Corbett and Judge Corbett, I urge you to move on, and you may actually want to jump to the 506 D. Okay, Your Honor. I think that, and I think 506 D when we look at... I'll move this around then. So, the 506 D issue is, one, there is no factual dispute that the claim was disallowed, and so... What does that mean? What does disallowed mean in this context? Well, in this context, our whole argument is that the... Well, the argument is that there was a claim that was filed by the secured creditor, specifically the second mortgage. The trustee objected to the claim. The second mortgage actually amended the claim, and then the trustee objected again. And the court simply issued an order that said the claim is disallowed. Okay. So, going back to our earlier discussion about the motion and the request forming the scope of the order, what was the basis for the objection? So, the basis for the objection was that they should look to the collateral for collection. Why would they look for the collateral if they didn't have a claim? And I actually don't think that it matters why they... I think it does if it's actually necessarily litigated for your preclusion.  So, Siegel... And this was even mentioned in one of the earlier arguments. Siegel basically says that whether... It doesn't really matter why the claim was objected to. To your point, the trustee said they should look at collateral. But the trustee could have objected based upon the claim not being sufficiently valid. They could have objected on several grounds, but those all merged into that order. And our point is finality in the order. If I'm looking at an order that says a claim is disallowed, other than the 506d exceptions, I should not have to look at why the order was issued. I should be able to take the order on its face and see that the claim was disallowed. And I think that's one of the issues we're looking at. And Siegel goes to that idea as well, is that we have to have finality in orders. Otherwise, now we're looking at an order that on its face says the claim was disallowed, and now we're going in and arguing every single disallowed claim based upon why the motion was filed and what claims were raised or what claims weren't raised. So, as I understand your argument is, based upon understanding by what the trustee is submitted in and the Chapter 7 trustee submitted in declaration, the point was that it should go deal with it outside the bankruptcy, in effect, to collect the claim. And yet, you are now saying there is no claim because it said disallowed. Correct, Your Honor, and there is a specific remedy for that. One is the creditor did not object to the objection to the claim. Neither did the debtor. The debtor didn't. So you're arguing on the preclusion that it's the same interest, same parties and stuff. Why isn't the debtor precluded then from objecting it? You can enforce that and say, go look, but the debtor cannot participate in this Chapter 13 now because there is a prior order. Go look to your collateral. You can enforce that order, but you're asking for more. You're asking for a substantive determination that there is no debt. Look at this. Am I missing something here? Is it okay? There might be a claim against the estate, okay? In essence, it's almost be an in personam type claim against the debtor that they could pay. But then there's also a claim against the property. There's an in rem claim here. And how is the in rem, the right to go after the property, extinguished by that order? 506D. So 506D only gives two exceptions for claim disallowance orders. And, well, the primary exception I think that's valid here is that, one, the claim didn't have to be filed. And I agree. In rem claims, it's long established that they pass through a bankruptcy case without a claim being filed. And so the issue here is that a claim didn't need to be filed. That's one. Two, it was a disallowed order that was isolated. So meaning it didn't say this claim is disallowed to the extent that it should be, that the property should be recovered outside of the bankruptcy case. And any such ambiguity, I don't think the objection or the order on its face was ambiguous. It just clearly said the claim was disallowed. And so when we look at 506D, 506D really only gives an exception or 506D2 due to failure to file. And so in this case, the claim was filed. The claim was disallowed. And so I don't see that there's any sort of wiggle room here arguing that the trustee, yes, the trustee said they should seek recovery outside of the case. But the trustee had several other actions that they could have brought. And they didn't. And so Siegel really goes towards that finality. If no objection had been brought, the claim would have been considered a valid claim under Siegel. And then I, unless there's a pressing question, I'll reserve the rest of my time. Any questions? Okay. Thank you. Ms. Silberstein. Thank you, Your Honors. Good morning. Chris Silberstein on behalf of Apelli Secured Creditor Riverflow Funding. As Your Honors hone in on some of the issues, I think one of the key issues is that that motion for relief filed in the Chapter 7 was not filed by my client's predecessor in interest. While the lender who originated both the first and second was IndyMac, IndyMac filed that motion for relief as to the first and only to the first. And we see this in the fact that the exhibits attached to the motion for relief are only applicable as to the first. And Your Honor pointed out the fact that the only reference to the second was in the equity analysis. And I think that's the other factor that points out that that motion for relief was only as to the first. And yes, the order language was very broad. And it did say that the relief was as to all stays. But then the remainder of that sentence indicated all stays under 362 and 524. It did not elaborate all stays as to other loans. As such, that motion for relief cannot be deemed an acceleration of my client's loan. Another issue that we have in this case is whether or not the proof of claim that was filed in the Chapter 7 is an acceleration. It was not an acceleration. The appellant references a number of cases that are Chapter 11 based, which is distinguishable. And the fact that those were Chapter 11s and the relation for the acceleration is under 11 U.S.C. 1124, which is not applicable in a 7 or now in the 13 case from which the matter is being appealed. Another issue that we have is, as Your Honors were questioning a few moments ago, 506. The trustee did not file the objection to claim based on 506. The issue was whether or not the trustee needed to pay the claim. It was an effort to reduce the administrative expenses, determine what claims did or did not need to be paid. It was not a question. The problem, counsel, the problem is that it asked that the claim be disallowed, and the court ordered the claim was disallowed. So, how do we take that order and apply it with 506D? Well, a claim can be disallowed without invalidating the underlying lien. And what's the authority? Your Honors, I'm sorry? What's the authority for a secured claim? What is the authority that the lien survives? Johnson v. Homestate. That case has held since the 1800s that the lien passes through to survive the bankruptcy. The in personam rights are extinguished with the discharge. However, the in rem rights remain. But that's the problem is that the in rem is only as long as there is a lien in 506D expressly voids the lien if it is not allowed. Because, you know, and I guess my problem with Judge Collins's decision here is he concludes that the earlier bankruptcy order put the creditor, your predecessor in interest, in the same position as if the claim had never been allowed, the claim had never been filed. But the claim was filed. So in that light, I mean, your opponent is arguing a very strict literal interpretation, but the words line up. The intention is not to the disallowance was not to invalidate the underlying lien. That's that's the key here. That wasn't even an issue that was addressed in the Chapter 7. And then with the recent default and the initiation of the new law, the foreclosure process and the subsequent Chapter 13 bankruptcy, these issues come back. I think Judge Collins was correct when he noted that even if the debtor is not personally liable because of the discharge, she still has to deal with the debt because the debt survived. And it has to be treated in the plan. Otherwise, she risks a motion for relief in the current case so that my client can proceed with foreclosure. So how do we deal with the language of 506D, which doesn't give us the exception that Judge Collins used when he made your ruling? He basically said, well, they did file a claim, but this is kind of like they didn't. And the lien just passes through. So I'm going to rule in their favor on that basis and say it satisfies the 506D-2 exception. But if a literal reading of the statute would, you might disagree with him on that. How do we square that? I think it comes from the definition of a claim. It's, is the money, the claim definition gets to whether or not the money is owed. And the money is owed. The lien survived the Chapter 7. Is there, are you familiar with the Blenheim or the Lane cases, or anything that we can draw from those cases as a basis for supporting your position? Yes, in those cases, the facts are distinguishable from this matter. In Blenheim and Lane, you had adversaries that sought to invalidate the lien. We didn't have that in either the 7 or in the current 13. The whole purpose of those was to avoid the liens. The purpose of the trustee's actions in the 7 was to disallow the claim and narrow the administration of the estate. Well, and in the Chapter 7 case, doesn't the trustee need an order or an amendment to the claim or something that says, I don't have to pay this one because it's a claim on the books and it's allowed until it's, you know, it's valid, prima facie valid and allowed until somebody objects. So he had to do something, right? I think the trustee needed to do something because the proof of claim was filed. Time after time, you see in Chapter 7s where secured creditors file a claim in an abundance of caution and the U.S. trustee or the Chapter 7 trustee objects because they're secured and they have the NREM options, which is exactly what we have in this situation. And the whole purpose is to eliminate one of the claims from the claim register such that the trustee doesn't have to include that in the administration of the estate. It does not go to the validity of the lien or whether or not that lender or servicer can pursue those obligations in NREM. Other issues that I know with regard to blend time is that the basis of that objection was validity as opposed to trying to dispose of a claim to narrow the issues that the trustee had to deal with or the claims that the trustee had to deal with. Additionally, the court in Lane noted that the issue there was the proof of claim had been filed by a party who was not entitled to enforce the debt. So we have a little bit of a distinguishable fact there versus our current case where the predecessor in interest was entitled to enforce that debt. My client's entitled to enforce that debt. So the disposition of that matter was for a different purpose and in determining whether or not that particular entity had the ability to file that claim from the outset. Thank you. I don't have anything further unless your honors have any additional questions. Let me just explore a point you were making. Your predecessor did not respond in the prior bankruptcy. By that lack of response allowing the objection to stand, one way to look at this, I think, and I'm interested in your view, gets to what Judge Corbett said is the lender was, the secure creditor was willing to forego its participation in the Chapter 7 estate and any in personam recovery, essentially on its undersecured claim, if you want to break it down to that part. Isn't that really what you're saying is the effect here? Correct. Their intention by not opposing was to abide by what has happened since the 1800s. The debt rides through the bankruptcy and affords them the opportunity to pursue it in rem. Right. Under Homestead, they were looking solely to their in rem rights. And it really is a quasi bifurcation between unsecured in personam, Chapter 7 recovery and in rem collateral recovery. And the election was made by not objecting to recover only against the collateral, which is what you're seeking to do now. Is that a fair statement? Correct. Okay. Thank you. Yes, Your Honor. Any other questions? All right. Thank you. Thank you. Trout, we've got about four and a half minutes. Thank you, Your Honors. I do want to then address Blenheim and Lane. I think it's important to note that 5060 exists, or 502 exists, and that there is a specific exception. That's an important point, isn't it? Because the original claim objection in the first bankruptcy was never 502. It was not under any basis under 502. Well, I don't think it needs to. So it does, because that's Lane, right? I mean, you get into Lane there. This is not a substantive objection. This is merely a pure procedural objection for the administration of the estate, the bankruptcy estate, the Chapter 7 estate, isn't it? Yes and no. I think that the problem I have with the inference of, I'm a guy who likes to look at what's written, and so I think the court should do the same. What we have here is, they're right. There's case law from the 1800s that says in-rem claims flow through the case if there's no claim filed. Additionally, the— There's three other circuits that's also held that if it's a procedural objection, that does not affect the substantive of the claim, and therefore, if it does not fall under 502, it cannot affect the debt itself. Well, I think that what we have, though, is we have Segal. We have a case that essentially says, if you don't object to the claim, it becomes—it's a valid, secured claim. And so I always look to the opposite. What does that mean for the Chapter 7? As to Judge Brand was saying, what does that mean? Okay, the trustee didn't happen. What was going to happen then? They were going to participate in the recovery, which to your point, may have been accelerated. Correct. I was going to bring that up, which is their claim— and I didn't mention this in my original argument— their claim requested the entire balance. It was both mature and unmatured. No, let's be fair here. The claim was saying what the debt was, right? Because the debt is defined in the Bankruptcy Code as any matured or unmatured obligation, correct? Correct. In this hypothetical, if the estate, for whatever reason, had recovered enough funds to pay that claim in full, I think the claim would have been paid in full. I think that was one of the concerns. So when they file in the Chapter 13, you have to pay the full amount? Well, the claim has a secured component and unsecured components, typically. Well, no, but that's the point. It's the claim, then there's the debt to be paid, right? That is an evolution. That's why I'm having a hard problem with your argument that by filing a claim, you have accelerated a debt, maybe, if you seek to enforce it and recover, but you may also want to just cure the arrears or you may just want to, as counsel said, be cautious to see what happens and then allow that objection to happen so the administration of the Chapter 7 may proceed. So I point to two things. Quickly on, because I'm running out of time, quickly on the acceleration. The point that I was making is, you gave several reasonable explanations as to what you can do with that proof of claim. The debtor shouldn't be expected to be a mind reader. I think that uncertainty... The debtor didn't have to in Chapter 7. That wasn't the debtor's problem. Well, the question is just whether Arizona law allows you to assume that was acceleration. I think it does. They didn't explicitly say this isn't an acceleration and I think that's enough to get us to acceleration. But I'd like to address 506. I think that the argument that bifurcates this claim, the claim was filed. There's no argument it wasn't. The claim was disallowed. I don't think it matters why the claim was disallowed unless it goes to the 5062, was this the proper party? No one argued that. Blenheim and Lane both go toward this proposition that Congress is fine with disallowed claims where you don't respond. In this case, they didn't respond. It's analogous. And so they sat on their hands. They didn't respond to the objection. They could have clarified in the order that the claim was disallowed as to only in rem or as to only in personam, not in rem. And so I think... Have you ever seen those orders? Have you ever seen them? I've seen a lot of those orders. Well, not that specify those two things, but I absolutely see that they can... I honestly... Secured claims don't file... Our secured creditors don't file claims in cases like this. So I don't think they want the risk. So I think that it's an important element here. I've definitely seen orders where debtors weren't clear enough in the language and they were harmed by not being clear in the order. And I think this is the case here. They had an opportunity to object to the order, to file a motion for reconsideration, to clarify the order. None of that was done before the case was closed. All right. Thank you very much for your argument. This matter is submitted. Thank you. Thank you, Your Honors. Thank you, Your Honors. All right. And that concludes the calendar. All rise. This court is in recess.
judges: BRAND, SPRAKER, and CORBIT